UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA MARIE CALLERES,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　　Defendant. | Case No. 1:19-cv-00513-EPG<br><br>**FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

　　　　This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 7, 8).

　　　　At a hearing on July 9, 2020, the Court heard from the parties and, having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, finds as follows:

\\\

\\\

**I.     Subjective Symptom Testimony**

Plaintiff first claims that the ALJ erred in not fully crediting Plaintiff's testimony regarding her symptoms.

According to the Ninth Circuit, A two-step process is employed for evaluating a claimant's testimony regarding the severity and limiting effect of the claimant's symptoms. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Lingenfelter v. Astrue, 504 F.3d at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [the claimant's] symptoms only by offering specific, clear and convincing reasons for doing so.'" Lingenfelter, 504 F.3d at 1036 (quoting Smolen, 80 F.3d at 1281). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Here, the ALJ found objective medical evidence of an underlying impairment.  The Court looks, therefore, to whether the ALJ rejected the claimant's testimony about the severity of his symptoms by offering specific, clear and convincing reasons for doing so.

The ALJ stated as follows regarding Plaintiff's symptom testimony:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> . . .
>
> Other treatment records indicate the claimant stated her prescribed medication helped her fatigue (Exhibit 4F, pp. 22, 42). Additionally, in subsequent physical examinations, the claimant's treating doctor indicated normal findings, including a normal range of motion and strength in her spine and no apparent acute distress (Exhibit 4F, pp. 34, 39, 44, 54).
>
> The medical evidence of record includes some objective findings to establish the claimant's alleged impairments, however, the overall medical evidence of record does not support more limitations than provided in the residual functional capacity herein. In a February 2015 physical examination, the doctor noted moderate tenderness in the claimant's left arm, bilateral back, bilateral sacrum, and bilateral legs (Exhibit 5F, p. 11). In May 2015, the claimant complained of increased pain throughout her body, and specifically in her neck, shoulders, and arms (Exhibit 5F, p. 8). The doctor maintained her prescribed pain medication but also recommended physical therapy to improve pain in her cervical spine and radicular symptoms. (Exhibit 5F, p. 9).
>
> Throughout 2015, the record demonstrates some findings in the record supporting limitations in the range of motion of her cervical and lumbar spine (Exhibit 7F, pp. 19, 28, 31, 40). Yet, the doctor also indicated that the claimant's condition improved with treatment, such as electrical stimulation, massages, and chiropractic care (*Id.*). Although the record shows that the claimant continued to seek treatment for stiff neck and back pain, the claimant also reported to her doctor that chiropractic care was helpful and she had less pain after treatment. (Exhibit 7F, p. 51).
>
> Moreover, the diagnostic evidence continued to reveal mild positive findings. An x-ray of the claimant's left shoulder was normal showing unremarkable soft tissue structures and normal glenohumeral articulation, acromioclavicular joint, and acromion (Exhibit 4F, p. 59). An x-ray of the claimant's cervical spine was also normal (Exhibit 4F, p. 61). Significantly, a magnetic resonance imaging (MRI) of the claimant's lumbar spine reveals unremarkable findings. A shallow, central and right paracentral disc herniation of the protrusion type was noted on the L5-S1 levels, however all other findings were normal (Exhibit 7F, p. 75). A lumbar spine x-ray also indicated minimal osteoarthritis (Exhibit 7F, p. 79).
>
> Records through 2016 and 2017 show that the claimant received regular treatment

for her alleged impairments that were rather routine and conservative in nature. Although the claimant reported persistent neck and back pain, the claimant's treating doctor maintained the claimant's treatment plan with little or no significant changes (Exhibit 11F).  The objective findings in the record do not fully support the alleged severity of the claimant's symptoms.  Indeed, a physical examination performed in November 2017 revealed slightly decreased range of motion in the claimant's cervical spine and some spinal dysfunction (Exhibit 11F, p. 6).  The record also shows that the claimant reported that her treatment was somewhat effective in controlling her symptoms.  She indicated in a subsequent treatment record that she received a shot that provided relief and "seemed to help." (Exhibit 11F, p. 2).

As an initial matter, that the ALJ does not specifically address the reasons for her findings regarding symptom testimony.  The ALJ stated, "the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision," and then proceeded to review the record.  The ALJ never stated which testimony is not credible and what evidence suggests the complaints are not credible.  For this reason alone, the ALJ's reasons are thus not sufficiently specific.

In briefing and oral argument, the Commissioner argues that the ALJ's decision sets forth three reasons for rejecting Plaintiff's symptom testimony: that certain normal objective findings contradict her symptom testimony, that her symptoms improved with treatment, and that she received only conservative treatment.

Regarding the normal findings, the ALJ pointed to the following: A.R. 421: "no acute distress," "normal range of motion, normal strength;" A.R. 426: "no acute distress," "normal range of motion, normal strength;" A.R. 431: "Normal Range of Motion, Normal Strength;" A.R. 451: same.  The ALJ also points to an x-ray showing normal findings, (A.R. 446), and an MRI showing unremarkable findings (A.R. 564, 565).  But see A.R. 565 ("L5-S1 shallow and left paracentral disc herniation of the protrusion type").

In response, Plaintiff points to records showing objective findings consistent with Plaintiff's symptom testimony, including A.R. 403: "tender arms and legs;" A.R. 407: "tender muscles;" A.R. 411: "tender left shoulder and decreased rom;" A.R. 355-356: "mild to moderate

fibromyalgia tender point tenderness," "mild tenderness in the paralumbar muscles;" A.R. 348-49: "moderate tenderness;" A.R. 475-76: "moderate tenderness," "moderate loss of motion in left arm;" A.R. 546: "tender low back and arms and legs;" A.R. 707: "tender low back and arms and legs." Plaintiff also cites to the Ninth Circuit's holding in *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017):

> Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." Benecke, 379 F.3d at 589. Typical symptoms include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue." *Id.* at 590. What is unusual about the disease is that those suffering from it have "muscle strength, sensory functions, and reflexes [that] are normal." Rollins v. Massanari, 261 F.3d 853, 863 (9th Cir. 2001) (Ferguson, J., dissenting) (quoting Muhammad B. Yunus, *Fibromyalgia Syndrome: Blueprint for a Reliable Diagnosis*, Consultant, June 1996, at 1260). "Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling." *Id.* (quoting Yunus, *supra*, at 1260). Indeed, "[t]here is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain." *Id.* The condition is diagnosed "entirely on the basis of the patients' reports of pain and other symptoms." Benecke, 379 F.3d at 590. "[T]here are no laboratory tests to confirm the diagnosis." *Id.*
>
> For a long time, fibromyalgia was "poorly understood within much of the medical community." *Id.* Indeed, "[t]here used to be considerable skepticism that fibromyalgia was a real disease." Kennedy v. Lilly Extended Disability Plan, 856 F.3d 1136, 1137 (7th Cir. 2017). In previous decisions, we were reluctant to recognize fibromyalgia as an impairment that could render one disabled for Social Security purposes. *See Rollins*, 261 F.3d at 857 ("Assuming, without deciding, that fibromyalgia does constitute a qualifying 'severe impairment' under the Act ...."). 14A sea-change occurred in 2012, when the SSA issued a ruling recognizing fibromyalgia as a valid "basis for a finding of disability."[2] Social Security Ruling ("SSR") 12-2P, at *2. The ruling provides two sets of criteria for diagnosing the condition, based on the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia and the 2010 American College of Rheumatology Preliminary Diagnostic Criteria. *Id.* Pursuant to the first set of criteria, a person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least three months (although the pain may "fluctuate in intensity and may not always be present"); (2) she has tenderness in at least eleven of eighteen specified points on her body; and (3) there is evidence that other disorders are not accounting for the pain. *Id.* at *2–3. Pursuant to the second set of criteria, a person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least three months

(although the pain may "fluctuate in intensity and may not always be present"); (2) she has experienced repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, "especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) there is evidence that other disorders are not accounting for the pain. *Id.* at *3.

Therefore, diagnosis of fibromyalgia does not rely on X-rays or MRIs. Further, SSR 12-2P recognizes that the symptoms of fibromyalgia "wax and wane," and that a person may have "bad days and good days." SSR 12-2P, at *6. In light of this, the ruling warns that after a claimant has established a diagnosis of fibromyalgia, an analysis of her RFC should consider "a longitudinal record whenever possible." *Id.*

Revels v. Berryhill, 874 F.3d 648, 656–657 (9th Cir. 2017).

The Court finds that the ALJ's reliance on instances of normal range of motion, no acute distress, and normal x-ray and MRI findings to discount Plaintiff's symptom testimony does not constitute a clear and convincing reason. The ALJ did not present any medical evidence that such normal tests contradict Plaintiff's symptoms, especially related to Plaintiff's fibromyalgia. Moreover, the Ninth Circuit has explained that those who suffer fibromyalgia do not show decreased muscle strength, and their symptoms do not show up on MRIs or x-rays. On the other hand, Plaintiff has demonstrated objective evidence that fits the criteria outlined by the Ninth Circuit for fibromyalgia.

The Court also notes that doctors who examined her at the time, and observed the normal results listed above, nevertheless diagnosed her consistent with her stated symptoms. For example, following one physical examination showing "normal range of motion, normal strength," the physician, Dr. Grasser, includes diagnoses of "chronic fatigue, fibromyalgia" among others. (A.R. 421).

Turning to the ALJ's next category of reasons, the ALJ pointed to places in the record where Plaintiff had stated that treatment improved her condition. For example: A.R. 473: doctor prescribes physical therapy (but does not state if they were effective); A.R. 508: noting "improved" next to massage related to muscle spasm; A.R. 517: noting muscle spasm in pelvic region has "improved" response to treatment; A.R. 31: noting "improved" next to treatments

1   including ultrasound, electronic muscle stimulation, massager and "diversified; A.R. 529 (same);
2   A.R. 540: noting under "history of Present Illness," "I have headache and stiff neck and upper
3   back pain. I have some LBP as usual . . . Chiro care is helpful, I have noted less pain with tx.;"
4   A.R. 591: "I have neck pain with fibromyalgia acting up, even to the right up back. I went to Dr.
5   Grasser for relief recently, got a shot that seemed to help."

6       While it is true that there is evidence in the record of improvement, nothing indicates that
7   improvement has alleviated the symptoms Plaintiff includes in her testimony. Nor does it state
8   what the condition was before or after the improvement. Moreover, these treatments were done
9   under the supervision of the treating physician, discussed below, who found very limiting
10  impairments notwithstanding these treatments. In this context, indications in treatment notes of
11  "improvement" do not comprise clear and convincing reasons for discounting Plaintiff's symptom
12  testimony.

13      Finally, the ALJ's reason of "regular treatment for her alleged impairments that were
14  rather routine and conservative in nature" is unsupported. As cited above, Plaintiff has
15  undertaken treatment including at least "chiro" care, massage, shots, ultrasound, and electronic
16  muscle stimulation. Moreover, the ALJ does not give any conservative treatment that is available
17  for such impairments, especially fibromyalgia, that the Plaintiff did not use.

18      The Court finds that the ALJ's discounting of Plaintiff's symptom testimony is not
19  sufficiently specific, clear and convincing.

20  **II.     Medical Opinion**

21      Next, Plaintiff argues that the ALJ failed to provide specific and legitimate reasons based
22  on substantial evidence to set aside Dr. Grasser's opinion.

23      In weighing medical source opinions in Social Security cases, there are three categories of
24  physicians: (i) treating physicians, who actually treat the claimant; (2) examining physicians,
25  who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat
26  nor examine the claimant. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ must
27  provide clear and convincing reasons that are supported by substantial evidence for rejecting the
28  uncontradicted opinion of a treating or examining doctor. Id.at 830–31; Bayliss v. Barnhart, 427

F.3d 1211, 1216 (9th Cir. 2005). An ALJ cannot reject a treating or examining physician's opinion in favor of another physician's opinion without first providing specific and legitimate reasons that are supported by substantial evidence. Bayliss, 427 F.3d at 1216; 20 C.F.R. § 404.1527(c)(4) (an ALJ must consider whether an opinion is consistent with the record as a whole); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding it not improper for an ALJ to reject a treating physician's opinion that is inconsistent with the record).

Dr. Grasser is a treating physician, who treated Plaintiff for more than two years. Her opinion is contradicted by non-examining state agency opinions. The Court looks to whether Plaintiff has set forth specific and legitimate reasons supported by substantial evidence, bearing in mind that, all things considered, Dr. Grasser's opinion as a long-term treating physician should be given deferential weight in comparison to the opinions of non-examining consulting physicians.

The ALJ found as follows regarding Dr. Grasser's opinion:

> The undersigned has also read and considered the opinion of Angela Grasser, M.D., and assigned little weight (Exhibit 9F). Dr. Grasser opined the following functional limitations, including: she can rarely lift or carry less than 10 pounds; she can never perform any postural activities; and she would miss more than 4 days per month due to her impairments. Dr. Grasser's opinion is without substantial support from any objective clinical or diagnostic findings, which obviously renders this opinion less persuasive. Moreover, the opinion expressed is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion. She assesses functional limitations that are much more restrictive than the evidence supports. For example, where the claimant's treatment notes show moderate tenderness or some limitations in the claimant's range of motion of her cervical and lumbar spine, Dr. Grasser assesses that the claimant has no ability to perform any postural activities (Exhibit 7F). Dr. Grasser's overall assessment is not entirely consistent with the medical evidence of record and therform, the undersigned assigned little weight to her opinion.
>
> In addition, the undersigned has also read and considered the opinion of Dr. Grasser as found in exhibit 10F, and assigns little weight. Dr. Grasser opined that the claimant could not sit, stand, or walk more than 2 hours in an 8-hour day, he [sic] also indicated that the claimant could not sit or stand more than 10 minutes at a time. Dr. Grasser also opined similarly restrictive functional limitations without referring to any clinical or medical evidence in the record to support his [sic] assessment. Furthermore, Dr. Grasser's assessment of severely restrictive

functional limitations is not support by the diagnostic evidence showing rather mild or normal findings.  (Exhibit 7F).

Regarding the ALJ's reason that "Dr. Grasser's opinion is without substantial support from any objective clinical or diagnostic findings, which obviously renders this opinion less persuasive.  Moreover, the opinion expressed is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion," Dr. Grasser's opinion is set forth on the form provided.  All portions of the form are complete.  The form does not ask for an explanation of the evidence relied upon.  The ALJ also fails to address the very substantial records related to Dr. Grasser's long-term treatment of Plaintiff in Exhibit 7F (84 pages).

Regarding the ALJ's reason based on mild or normal findings, the findings referenced are not inconsistent with the limitations given for the reasons described above in connection with Plaintiff's symptom testimony.

Thus, the Court concludes that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for discounting the opinion of Plaintiff's treating physician, Dr. Grasser.

### III. Lay Testimony

Finally, Plaintiff claims that ALJ failed to provide a germane reason for disregarding Plaintiff's spouse's testimony.

Any person who gives testimony about a claimant's impairments can qualify as a lay witness. SSR 06-03p, 2006 WL 2329939, at *2. Lay-witness testimony about a claimant's symptoms is competent evidence that the ALJ must consider unless she "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ's reasons for rejecting lay-witness testimony must be specific and germane. Bruce v. Astrue, 557 F.3d 113, 115 (9th Cir. 2009).

The ALJ discussed the third-party statement as follows:

> The undersigned has also read and considered the Third Party Function Report the claimant's husband, Ramon Calleres, completed on March 23, 2015 (Exhibit 5E). While a layperson can offer an opinion on the severity of the claimant's symptoms in relationship to the claimant's ability to work, the opinion of a layperson is far

> less persuasive on those same issues than are the opinions of medical professional as relied on herein. Thus, the undersigned has given this statement only partial weight. The undersigned considered this statement about the claimant's physical and mental limitations and adopted the appropriate limitations. However, the assertions of the claimant's husband regarding the claimant's limitations are not persuasive of additional restrictions in the residual functional capacity, as the clinical or diagnostic medical evidence does not support his statement.

(A.R. 23).

The ALJ's first reason, that lay testimony is given less weight than medical testimony, is not a germane reason to give the opinion little weight. Such a reason would apply to all lay testimony. While it is true that a medical opinion might be due greater weight than a contradictory lay opinion, such is not the case here. In this case, the treating physician gave opinions consistent with the lay opinion, and that consistency should have been given some weight in determining the validity of both. This is especially true when dealing with fibromyalgia, which is less susceptible to objective tests as discussed above. In those circumstances, lay opinion about Plaintiff's symptoms should not be discounted merely because it is not a medical opinion.

The ALJ's second reason, that the lay opinion was not supported by clinical or diagnostic medical evidence, could be a germane reason if supported by the record. However, this reason is not supported by the record for the reasons described above. The ALJ also does not specifically compare any portion of the lay testimony with any clinical or diagnostic medical evidence.

The ALJ's dismissal of this lay testimony is particularly harmful when put in context of the rest of the ALJ's opinion. Here, the central impairment, fibromyalgia, cannot be tracked by ordinary diagnostics. It is centrally important, therefore, to evaluate the testimony of those who have observed the Plaintiff and assess their consistency and credibility. The ALJ did not do so here. Instead, she discounted the testimony of all three witnesses who have observed Plaintiff—Plaintiff herself, her treating physician, and her spouse—in favor of the medical opinion of non-examining consulting physicians for reasons contrary to Ninth Circuit law. Such evaluation was legal error.

\\\

### IV. Remedy

The parties did not brief the appropriate remedy in this case. Although it appears likely that Plaintiff will qualify for benefits once the challenged opinions are credited as true, the Court hesitates to make this conclusion without direction from the parties and citations comparing the opinions with testimony from the Vocational Expert. Thus, in the abundance of caution, the Court will remand the case for further proceedings consistent with this opinion.

### V. Conclusion

Accordingly, the decision of the Commissioner of the Social Security Administration is REVERSED and REMANDED for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: **July 17, 2020**  /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE